IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

CATHY DIANNE QUALLS,               )
                                   )
            Plaintiff,             )
                                   )
      v.                           )    CIVIL ACTION NO. 1:10cv651-CSC
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
            Defendant.             )

## MEMORANDUM OPINION

## I. Introduction

On February 13, 2007, the plaintiff applied for disability insurance benefits pursuant

to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. and for supplemental security

income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*,

alleging that she was unable to work because of a disability. Her application was denied at

the initial administrative level. The plaintiff then requested and received a hearing before

an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the

claim. The Appeals Council rejected a subsequent request for review on May 28, 2010. The

ALJ's decision consequently became the final decision of the Commissioner of Social

Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[1] The

case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No.
103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social
Security matters were transferred to the Commissioner of Social Security.

Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and remanded for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A) a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the claimant presently unemployed?
> (2)  Is the claimant's impairment severe?
> (3)  Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the claimant unable to perform his or her former occupation?
> (5)  Is the claimant unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11ᵗʰ Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11ᵗʰ Cir. 1997); 42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11ᵗʰ Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11ᵗʰ Cir. 1987).

### III.  The Issues

**A. Introduction.**  The plaintiff, Cathy Diane Qualls ("Qualls") was born on February 19, 1961.  (R. 32).  She is separated from her husband and lives with an adult daughter in Section 8 housing (R. 31-34).  She has no source of income other than limited financial

---

[3]  *McDaniel v. Bowen,* 800 F.2d 1026 (11ᵗʰ Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  *See Sullivan v. Zebley*, 493 U.S. 521,525 n.3 (1990). Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Sullivan*, 493 U.S. at 525 n.3; *Ware v. Schweiker*, 651 F.2d 408 (5ᵗʰ Cir. 1981) (Unit A).

assistance from her two daughters, and she receives food stamps.  (R. 33-34).  Qualls

completed school through the fifth grade and was fifteen when she dropped out of school in

the middle of the sixth grade.  (R. 33-34).  Her prior work experience includes employment

as a short order cook, day care worker, school lunchroom worker, and clothing sorter at a

thrift store.  (R. 38-43).  Qualls is 5'4" tall and weighs 211 pounds. (R. 34).

At the hearing before the ALJ on January 13, 2009, Qualls was advised of her right

to representation (R. 27, 125), but she chose to proceed without representation because the

attorney she had hired to represent her had informed her that he was too "tied up in court"

to review her file or to attend the hearing.[4]  (R. 24-27).

At the hearing, Qualls testified that she was unable to work due to  neuropathy, pain,

and burning in her feet, lower back pain, arthritis in both knees, bilateral carpal tunnel

syndrome, shoulder pain, anxiety attacks, and depression.  (R. 36-37, 43-52, *see also* R. 153,

172, 202-03).  Following the hearing, the ALJ concluded that Qualls had the following

severe impairments: "degenerative disk disease of the lumbar spine, carpal tunnel syndrome,

by history; and anxiety disorder with depression."  (R. 12).  The ALJ further concluded that

Qualls's impairments or combination of impairments did not meet or medically equal one of

the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (R. 12).  The ALJ concluded

that Qualls was unable to return to her past relevant work.  (R. 18).  The ALJ determined that

---

[4]The record does not reflect the identity of the attorney who failed to appear at the hearing or to
review Qualls's file despite the fact that he had been in possession of the file for several months. (R.25) As
the ALJ observed, that attorney had "plenty of time ... to review" the file and prepare for the hearing. (R.26.)
The attorney representing Qualls before this court is not the attorney who failed to appear and assist Qualls
the hearing.  (*See* R. 24-25).

Qualls had the residual functional capacity to perform less than a full range of light work.

(R. 18).  The ALJ concluded that Qualls had the residual functional capacity to perform other

work in the national economy, and thus, she was not disabled.  (R. 19-20).

**B. Plaintiff's Claims.**  As stated by the plaintiff, the primary issues are as follows:

> [Qualls] contends that ALJ should have found that she had severe medical
> impairments relating to her chronic low back pain, peripheral neuropathy, and
> bilateral carpal tunnel. [Qualls] further contends that the ALJ failed to adhere
> to the vocational expert's determination.

(Pl's Br. at 11-12).

## IV.  Discussion

**A.    Whether ALJ erred by failing to find that Qualls had severe medical
       impairments relating to her chronic low back pain, peripheral neuropathy, and
       bilateral carpal tunnel.**

Qualls contends that the ALJ erred in that she "should have found that [Qualls] had

severe medical impairments relating to her chronic low back pain, peripheral neuropathy, and

bilateral carpal tunnel."  (Pl's Br. at 11-12).  The ALJ concluded that Qualls's degenerative

disk disease of the lower spine and carpal tunnel syndrome constituted "severe impairments."

(R. 12).   Therefore, there is no merit to Qualls's argument that the ALJ erred in failing to

consider her lower back pain and carpal tunnel syndrome to be severe impairments.

However, the ALJ failed to consider whether Qualls's neuropathy was a severe

impairment.  According to Qualls, she was unable to continue employment at her last job due

to panic attacks and pain and numbness in her feet, legs, and knees. (R. 36-37, 255).  She has

a history of neuropathy causing pain and burning in her feet, and of arthritis in her knees.

5

She consulted a Dr. Cook for those symptoms (R. 255), who told her she was borderline for diabetes and that she had neuropathy in her feet (R. 46-47).  Dr. Cook's records are, for all practical purposes, illegible.  (R. 206-215; *see also* R. 255 (Dr. Fred George's notes stating: "Records of multiple medical visits with Dr. Cook were enclosed but were not able to be read.")).  However, the ALJ determined that Dr. Cook's "records indicated that [Qualls] has complained to him of radiating pain in her back and legs, but he has not ordered any testing to determine the etiology of the pain."  (R. 16).  At the administrative hearing, Qualls reported that she had last seen Dr. Cook in 2007 because "I've not had the money really to go see him.  I mean, I know I need to but I, financially I can't afford to."  (R. 44).

Nevertheless, the administrative record contains documentation of Qualls's neuropathy and pain in her legs and feet.  On November 22, 2005, Qualls was admitted to the emergency room and treated for an acute muscle spasm in her left calf.  (R. 245-248).  She was noted to "ambulate[] with difficulty and distress."  (R. 245).  She reported that she had a history of neuropathy in her feet (R. 245, 248) and that she took Darvocet to treat the neuropathy (R. 245).

On May 17, 2007, Dr. David Arnold, a family practitioner, performed a consultative examination of Qualls.  Qualls reported to Dr. Arnold that she had neuropathy in her feet and legs for about 7 years, and that Lyrica[5] had helped with her symptoms but she was unable to

---

[5] According to information on the website of the U.S. National Library of Medicine, Lyrica "is used to relieve neuropathic pain (pain from damaged nerves)  that can occur in [the]  arms, hands, fingers, legs, feet, or toes if [the patient has] diabetes....  It is also used to treat fibromyalgia (a long-lasting condition that may cause pain, muscle stiffness and tenderness, tiredness, and difficulty falling asleep or staying asleep). ... It works by decreasing the number of pain signals that are sent out by damaged nerves in the body." http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000327/.

take it regularly because she could not afford it.  (R. 224).  Qualls also reported to Dr. Arnold that she was "having significant joint pains and discomfort.  The following joints are particularly involved: both knees[.]  There is swelling and inflamation....  There has been swelling at times, and there is often heat.  The medications help at time[s]."  (R. 225).  On examination that day, Dr. Arnold noted "no joint swelling, thickening, effusion, heat, or redness."  (R. 226).  He also noted "no motor sensory deficits ... although [Qualls] reports decrease in light touch bilateral legs and feet from mid calves down."  *Id*.  As the ALJ noted, Dr. Arnold determined that Qualls had "symptoms suggesting peripheral neuropathy."  (R. 16, 227).  In addition, Dr. Arnold noted that "there would be the suspicion of diabetes."  (R. 227).

On October 6, 2007, Qualls was admitted to the emergency room for back pain.  (R. 233).  She reported a past history of peripheral neuropathy.  (R. 235).  She was diagnosed with acute lumbar myofascial strain and discharged.  (R. 236-37).

At the administrative hearing, Qualls consistently stated that she suffered neuropathy in her feet and legs, including sensations of severe pain and burning, and she described how these symptoms limited her ability to work and engage in her normal activities of daily living. (R. 36-37, 43-44, 49-53).  She indicated that these symptoms were progressively getting worse.  (R. 50).  Qualls testified that the pain was so intense that it interfered with her ability to walk, disrupted her sleep,  and caused her great difficulty in traversing a short distance from her bed to the bathroom at night (R. 50-51).  She testified that she was unable to drive

as much as she used to because at times the pain in her legs would be so great when she was

driving that she would have to pull over onto the side of the road and wait for the pain to

subside, or, if one of her daughters was in the car, she would have one of her daughters "take

over" driving.  (R. 55).[6]  Qualls also testified:

> I know it's hard for anyone to understand what I'm going through because I
> don't have the medical records to back it up.  And I understand that's the
> problem I'm having now.  You know, I wished I did but I don't have the
> money to do it with.

(R. 51-52).

Qualls also reported continuing depression and panic attacks.  (R. 36, 53).  "I stay

depressed a lot and then more so here lately than ever before.  And I think a lot of that could

do with the pain that I'm in.  There's some days that I'm just ill toward everybody."  (R. 53).

Because Qualls reported depression and panic attacks, but had no medical records regarding

those conditions, the ALJ referred her to Dr. Fred George, a clinical psychologist, for a

consultative psychological evaluation.  (R. 62-64).

On February 26, 2009, Qualls went to the emergency room for pain in her right knee

which she rated as a ten on a one-to-ten scale on which ten represented "the worst pain ever."

(R. 259, 263).  She was noted to be "in mild distress."  (R. 260).  An examination of the knee

revealed "[d]iffuse, moderate tenderness over the entire joint without localization" and that

---

[6]One of Qualls's daughters attended the hearing with her, and Qualls introduced her as " the only
person I have that ... knows my, you know, my case history.  So it wouldn't be a problem if she wanted to
I, I, you know, she could [testify]."  (R. 28).  Qualls's daughter lived with Qualls, assisted Qualls with her
activities of daily living such as personal care and housework, and sometimes had to drive for Qualls due to
the pain in Qualls's legs and feet.  (R. 53-55).  The ALJ did not seek testimony from Qualls's daughter.

a "small amount of soft tissue swelling [was] present." (R. 260).   She was diagnosed with arthralgia and osteoarthritis pain and was prescribed Celebrex.   *Id*.   The treatment notes contain the observation that she "ambulate[d] independently with [a] mild limp," but also that she "walked with steady gait to the desk" when discharged.   (R. 263).   Upon discharge, she rated her pain as an eight on a one-to-ten scale.   *Id*.

On March 10, 2009, Qualls was evaluated by Dr. George.   Qualls reported to Dr. George that she was being treated by Dr. Cook for diabetes and neuropathy as well as for her joint and back pain.   (R. 255).   Dr. George noted that he had been provided with Dr. Cook's records and that Dr. Cook's records were unreadable.   (R. 255).   At the conclusion of the evaluation, Dr. George's comments were as follows:

1.      Ms. Qualls was cooperative and the evaluation is considered valid.

...

5.      Ms. Qualls should be referred for mental health evaluation and treatment and would likely benefit from medication for her depression.

6.       Ms. Qualls should be referred for a neurological evaluation.

7.      Ms. Qualls should be referred for evaluation by a rheumatologist.

(R. 257).

"[A] 'severe impairment' [is] defined as 'any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities.'"   *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (quoting 20 C.F.R. § 404.1520(c)).   Basic work activities "include ... [p]hysical functions such as walking,

standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."   20 CFR §
404.1521.  An impairment can be considered as "not severe only if the abnormality is so
slight and its effect so minimal that it would clearly not be expected to interfere with the
individual's ability to work, irrespective of age, education or work experience." *McDaniel
v. Bowen*, 800 F.2d 1026, 1031  (11th Cir. 1986); *see also Brady v. Heckler*, 724 F.2d 914,
920 (11th Cir. 1984)).  To satisfy the "mild" burden to demonstrate a severe impairment at
step two, the claimant "need show only that her impairment is not so slight and its effect is
not so minimal." *McDaniel,* 800 F.2d at 1031. The step two severity analysis is a threshold
inquiry that allows only "claims based on the most trivial impairment to be rejected."
*McDaniel*, 800 F.2d at 1031.

The record in this case includes medical observations and diagnoses regarding
neuropathy, pain and numbness in Qualls's legs.  Further, Qualls testified extensively that
she was unable to work and go about the daily activities of ordinary life (including activities
such as standing and carrying) due to neuropathy and pain in her feet and legs in combination
with other impairments.  (R. 36-37, 43-44, 49-53).  The record does not contain substantial
evidence to support a finding that Qualls's neuropathy, pain, and numbness in her legs, alone
or in combinations with other impairments, is such a slight abnormality "that it would clearly
not be expected to interfere with [Qualls']s ability to work, irrespective of age, education or
work experience." *McDaniel*, 800 F.2d at 1031.  Accordingly, the ALJ erred in failing to
identify Qualls's neuropathy as a severe impairment. R. 12.

**B.      Whether the ALJ committed reversible error by failing to account for the functional limitations of Qualls's neuropathy at steps four and five of the sequential analysis**

"The finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two." *Jamison v. Bowen*, 814 F. 2d 585, 588 (11th Cir. 1987); *see also Heatly v. Comm'r of Social Sec.*, 382 Fed. Appx. 823 (11th Cir. 2010) (panel decision).  Here, consistent with the regulations and applicable law, the ALJ credited Qualls with severe impairments at step two and proceeded forward with the sequential evaluation.  Thus, if Qualls's neuropathy should have been included as a severe impairment at step two, the omission constitutes reversible error only if the ALJ failed in subsequent steps of her analysis to fully account for functional limitations arising from that impairment.  *See Heatly*, 382 Fed.Appx. 823; *see also Burgin v. Comm'r of Social Sec.*, 420 Fed. Appx.  901, 903 (11th Cir. 2011) (panel decision) ("Even assuming the ALJ erred when he concluded [the claimant's] edema, sleep apnea, and obesity were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process."); *Delia v. Comm'r of Social Sec.*, 433 Fed. Appx. 885, 887 (11th Cir. 2011) (panel decision) ("Because the ALJ gave full consideration to the consequences of [the claimant's] mental impairments on his ability to work at later stages of the analysis, the error [in failing to identify the claimant's mental impairments as a severe disability] at step two was harmless and is not cause for

reversal.").

In this case, the ALJ committed reversible error by failing to account for the functional limitations of Qualls's neuropathy in steps four and five[7] of the sequential analysis. Specifically, ALJ failed to properly consider the existence and limitations of Qualls's neuropathy by (1) improperly substituting her medical opinion for that of Qualls's treating physicians; (2) failing to adequately develop the record; (3)  failing to order a consultative examination where the evidence needed to support a decision was not contained in the records or medical sources; and (4) stating inadequate reasons for discounting Qualls's subjective complaints of pain and numbness in her legs and feet.

To establish a disability based on complaints of pain and other subjective conditions, "the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Id.* The ALJ's failure to articulate adequate reasons for discrediting subjective testimony "requires, as a matter of law, that the testimony be accepted as true." *Id.*

---

[7]Qualls does not challenge the ALJ's determination at step three of the analysis that Qualls's impairments failed to meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Because the court finds that the case is due to be reversed and remanded on other grounds, the court pretermits discussion of whether the ALJ erred at step three of the analysis.

"Absent a showing of good cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (citing *Broughton v. Heckler*, 776 F.2d 960 (11th Cir. 1985); *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986)).  In evaluating the evidence of an underlying medical condition of neuropathy, and in determining Qualls's residual functional capacity, the ALJ found (without supporting medical evidence, and contrary to the conclusions of treating physicians) that Qualls's complaints of leg and foot pain and numbness were not caused by neuropathy, but were instead "consistent with degenerative disc disease or degenerative joint disease."  (R. 15). The physicians who examined Qualls in relation to her complaints of leg and foot pain and numbness diagnosed Qualls with neuropathy, arthralgia, and osteoarthritis pain, but did not attribute Qualls's leg pain and numbness to degenerative disk disease.  Further, as the ALJ recognized, radiological testing of the lumbar spine was normal.  (R. 15).  The ALJ's medical conclusion attributing Qualls's leg and foot pain and numbness to degenerative disc disease or degenerative joint disease is not supported by the record.  Therefore, the ALJ erred by failing to state good cause for substituting her judgment for that of the treating and consulting physicians.  *See Lamb*, *supra*, *see also Wind v. Barnhart*,  133 Fed. Appx. 684, 691 (11th Cir. 2005) ("[T]he ALJ commits error if he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians absent good cause.").

In disregarding the treating and consulting physicians' conclusions that Qualls

suffered from neuropathy, the ALJ relied on grounds that the record *lacked* objective medical documentation and diagnostic testing to support the physicians' conclusions. (*See* R. 15-16). However, "because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)  "The lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits." *Brown v. Shalala*, 44 F.3d 931, 935-36 (11th Cir. 1995).   Without further development of the record, the ALJ had no basis for assuming that a lack of diagnostic testing in the medical record invalidated the physician's conclusions and disproved Qualls's contention that she suffered from neuropathy. Accordingly, the ALJ erred by failing to adequately develop the record.

Further, in keeping with the ALJ's duty to develop the record, the ALJ is required to order a consultative examination where the record lacks sufficient evidence for the ALJ to make an informed decision. *Ingram v. Astrue*, 496 F.3d 1253, 1269 (11th Cir. 2007) ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination *as long as the record contains sufficient evidence for the administrative law judge to make an informed decision*." (emphasis added)); *Holladay v. Bowen*,  848 F.2d 1206, 1209 (11th Cir. 1988) ("[B]ecause of the Secretary's duty to develop the medical record fully and fairly, this court has held that '[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is

necessary for him to make an informed decision.' *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir.1984).") ; *see also* 20 C.F.R. § 404.1529 ("At the administrative law judge hearing or Appeals Council level of the administrative review process, the adjudicator(s) may ask for and consider the opinion of a medical or psychological expert concerning whether [the claimant's] impairment(s) could reasonably be expected to produce [the] alleged symptoms."); 20 C.F.R. § 1519a(b) (a consultative examination is "normally require[d]" where the evidence needed to support a decision is not contained in the records or medical sources or is not available for reasons beyond the claimant's control).

The Court notes that, in addition to Qualls's financial inability to obtain medical treatment and testing, it appears that medical evidence of Qualls's neuropathy is also lacking through no fault of Qualls's own because the treating physicians who concluded that Qualls suffered from neuropathy did not order such testing, and because Dr. Cook's records are illegible.   (R. 44, 46-47, 51-52, 206-215; see also R. 255 (Dr. Fred George's notes stating: "Records of multiple medical visits with Dr. Cook were enclosed but were not able to be read.")).   (R.46-47).   The court further notes that, because Qualls complained that she suffered from depression as a result "of the pain [she was] in,"   (R. 53), the ALJ sought to develop the record by referring Qualls to Dr. George (R. 62-64).   In his report, Dr. George referenced Qualls's complaints of neuropathy and leg and foot pain and numbness.   (R. 255-57).   Dr. George recommended that Qualls be referred to a rheumatologist and a neurologist. (R. 257).   The ALJ never referred Qualls to a rheumatological or neurological examination,

despite basing her conclusion that Qualls's symptoms were caused by degenerative disc disease on a *lack* of neurological testing and objective medical data to support the diagnosis of neuropathy. (*See* R. 15-16). The ALJ erred by failing to refer Qualls to a neurologist to develop the record where a consultative examination was necessary to obtain objective medical evidence and laboratory findings, and where a consulting medical expert recommended evaluation by a neurologist and rheumatologist. *See Holladay*, *supra*; *Reeves*, 734 F.2d at 522 n.1 (noting that the ALJ failed to order a consultative examination by an orthopedist even though the SSA's consulting doctor recommended such an evaluation, and directing the ALJ to order the consultative examination on remand).

Finally, the ALJ failed to state adequate reasons for discounting Qualls's subjective statements about the pain associated with her neuropathy. "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*. 284 F.3d 1219, 1225 (11th Cir. 2002) . The ALJ discounted Qualls's subjective statements about her neuropathy and pain in part because Qualls did not take her medicine due to lack of finances, and because Qualls had not sought obtained more extensive medical testing and treatment. (R. 15-17). Qualls has no income, is on food stamps, and lives rent-free in Section 8 housing. She testified that she was financially unable to afford medical treatment and prescribed medications. "'To a poor person, a medicine that he cannot afford to buy does not exist.'" *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (quoting *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir.1986)).

The Commissioner contends that Qualls's financial circumstances do not excuse her failure to obtain more extensive treatment. The Commissioner argues:

> "Social Security Ruling (SSR) 82-59 states that 'all possible resources (e.g., clinics, charitable and public assistance agencies, etc.) must be explored' by the claimant to determine if she could qualify for medication or treatment at a reduced or free rate. The SSR further provides that the claimant must document her circumstances and contacts in order to claim that she cannot afford treatment. Here, [Qualls] has made no such showing."

SSR 82-59 provides that "[a]n individual who would otherwise be found to be under a disability, but who fails *without justifiable cause* to follow treatment prescribed by a treating source which the [SSA] determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability." SSR 82–59, *available at* http://www.ssa.gov/OP_Home/rulings/di/02/SSR82-59-di-02.html (emphasis added); *see also Mack v. Commissioner of Social Security*, 420 Fed. Appx. 881 (11th Cir. 2011) (discussion SSR 82-59). "Justifiable cause" under SSR 82-59 exists where the "individual is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable. " SSR 82–59. "All possible resources (e.g., clinics, charitable and public assistance agencies, etc.), must be explored. Contacts with such resources and the claimant's financial circumstances must be documented." *Id.*

However, SSR 82-59 also provides:

> Where the treating source has prescribed treatment clearly expected to restore ability to engage in any SGA (or gainful activity, as appropriate), but the disabled individual is not undergoing such treatment, appropriate development must be made to resolve whether the claimant or beneficiary is justifiably failing to undergo the treatment prescribed.

> Development With the Claimant or Beneficiary -- The claimant or beneficiary should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment. Detailed questioning may be needed to identify and clarify the essential factors of refusal. The record must reflect as clearly and accurately as possible the claimant's or beneficiary's reason(s) for failing to follow the prescribed treatment.

*Id.*

Therefore, contrary to the Commissioner's argument, SSR 82-59 does not require an unrepresented claimant like Qualls to explain and document that she has sought all available free treatment, even without being asked about this matter by the ALJ.  *Id*.; *see also Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) ("Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.");  *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981) (holding that, because a hearing before an ALJ is not an adversary proceeding, the ALJ's basic "obligation to develop a full and fair record" exists even where "the claimant ... has waived the right to representation").  Here, the ALJ did not develop the record with regard to whether relevant free community resources existed as required under SSR 82-59. Therefore, there is no merit to the argument that, under SSR 82-59, Qualls's lack of financial resources is an unjustified reason for failing to seek treatment.  Rather, as a matter of law, the ALJ erred in discounting Qualls's subjective statements about neuropathy and in finding that "the claimant's choice not to follow prescribed treatment ... suggests the pain is not as severe as she alleges." (R. 17). *See Dawkins,* 848 F.2d at 1213 ("We agree with every circuit that has considered the issue that poverty excuses noncompliance.  *See, e.g., ... Dover v.*

*Bowen*, 784 F.2d 335, 337 (8th Cir. 1986) ('the ALJ must consider a claimant's allegation that he has not sought treatment or used medications because of lack of finances').").

For these reasons, the court finds that the ALJ committed reversible error by failing to account for the functional limitations of Qualls's neuropathy at steps four and five of the sequential analysis.  The case is therefore due to be remanded.

**C.     Whether the ALJ failed to adhere to the vocational expert's determination**

At the January 13, 2010 administrative hearing, the ALJ took testimony from Barry Murphy, a vocational expert.  The ALJ posed a series of hypothetical questions to Murphy. (R. 57-62).  At the conclusion of these hypothetical questions, the ALJ asked Murphy whether, if she found that Qualls "had concentration difficulties that interfered with, such that the individual could not sustain or focus for two hour blocks of time, how would that impact the occupational base?" (R. 62).  Murphy responded: "Such an individual would be unemployable.  There would be no work appropriate." (R. 62).

Based on Murphy's response to the ALJ's hypothetical question, Qualls argues that the ALJ erred by failing to find that Qualls was able to perform less than a full range of light work.  It is clear from the ALJ's opinion that she did <u>not</u> find that Qualls had concentration difficulties that prevented her from sustaining her focus for two hour blocks of time.  Qualls does not challenge the ALJ's finding in this regard.  Accordingly, the ALJ was not required to consider Murphy's testimony that, if Qualls could not concentrate for two hour blocks of time, she would have been "unemployable."

## V. Conclusion

Accordingly,  this case  will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.  It is further

**ORDERED** that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have **sixty (60)** days after she receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 n.1 (11th Cir. 2008).

A separate order will issue.

Done this 17th day of January, 2012.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE